743 So.2d 862 (1999)
CONSOLIDATED DISTRIBUTORS, INC., Susan G. Vinson, Gale R. Hodge, Murray L. Florence, Jr., Joel Kaplowitz, Lambert R. Dralle and Frank D. Hamrick, Plaintiffs,
v.
The UNITED GROUP OF NATIONAL PAPER DISTRIBUTORS, INC., Defendant-Appellant.
No. 32,431-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Onebane, Bernard, Torian, Diaz, McNamara & Abell by Edward C. Abell, Jr., Terry J. Blanchard, Lafayette, Counsel for Appellant.
Barham & Arceneaux by Mack E. Barham, Gail N. Wise, New Orleans, Counsel for Appellees, Mack E. Barham and Barham & Arceneaux, APLC.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises out of the trial court's sanctioning of The United Group of National Distributors, Inc. ("The United Group") following the clerk of court's improper issuance of a subpoena duces tecum on behalf of The United Group to Mack Barham and the law firm of Barham and Arceneaux (collectively referred to as "Barham and Arceneaux"). The United Group also filed a motion for sanctions against Barham and Arceneaux which was denied by the trial court. The United Group appeals. For the reasons stated *863 herein, the judgment of the trial court is reversed, in part, and affirmed, in part.

FACTS AND PROCEDURAL BACKGROUND
There are two civil cases which are pertinent to this action, the first of which is The United Group of National Paper Distributors, Inc., et al v. Carole Susan Gilley Vinson, et al ("Vinson"), No. 91-1046 on the docket of the Fourth Judicial District Court. In Vinson, a jury verdict was rendered for the plaintiffs in the amount of $9,500,000 due to misappropriation of trade secrets, breach of fiduciary duties and unfair trade practices of the defendant.
After the trial, Steven M. Goodman, one of the defendants in Vinson, hired the law firm of Barham and Arceneaux to represent him. The trial court granted Mr. Goodman's motion for new trial, but plaintiffs elected to dismiss the suit as to Mr. Goodman. Subsequently, Mr. Goodman filed suit against The United Group for malicious prosecution and intentional tort, the second civil suit pertinent to the instant action. That case was entitled Steven M. Goodman v. Paul D. Spillers, et al ("Goodman"), No. 95-2316 on the docket of the Fourth Judicial District Court. The petition in Goodman was thereafter amended to add a claim for attorney fees under the indemnification provision of La. R.S. 12:83(B). In Goodman, the trial court granted partial summary judgment in favor of Mr. Goodman and ordered The United Group to pay the attorney fees reasonably incurred by him.
Other defendants in Vinson appealed the jury verdict which was reversed by this court. United Group v. Vinson, 27,739 (La.App.2d Cir.1/25/96), 666 So.2d 1338, writ denied, 96-0714 (La.9/27/96), 679 So.2d 1358. Those defendants, Consolidated Distributors, Inc., et al ("CDI"), then filed the instant case against The United Group for indemnification for attorney fees under the indemnification provision of La. R.S. 12:83(B).
Edward Abell, counsel for The United Group, requested that the clerk of court issue subpoenas duces tecum, under the captions of Vinson and Goodman, to counsel for the various plaintiffs in the instant case, and to counsel for Mr. Goodman in his separate suit, requesting production of billing records in order to determine whether the amount of attorney fees requested to be indemnified were reasonable. On July 8, 1998, a subpoena duces tecum was issued under the caption of the instant lawsuit to Barham and Arceneaux, directing it to produce the following:
For every billing timekeeper who performed services for or on behalf of Steven M. Goodman in defense of the claims asserted against him in "The United Group of National Paper Distributors, Inc., et al, vs. Carole Susan Gilley Vinson, et al," Docket No. 91-1046, Fourth Judicial District Court, Parish of Ouachita, Louisiana ("Vinson") and/or in "Steven M. Goodman v. Paul D. Spillers, et al," Docket No. 95-2316, Fourth Judicial District Court, Ouachita Parish, Louisiana, please produce:
a. All contemporaneous billing records of each timekeeper charged or billed to clients other than Steven M. Goodman on each day or billing cycle for which there is a time entry charged to Goodman.
On receipt of the subpoena duces tecum, Gail Wise, an attorney with Barham and Arceneaux, attempted to telephone Mr. Abell to discuss the subpoena, but there was not an attorney available to speak with her. Thereafter, on August 14, 1998, Barham and Arceneaux filed a motion to quash the subpoena duces tecum and for protective order on the grounds that the subpoena sought information protected by the attorney-client privilege; that it was issued and served in violation of La. C.E. art. 508; that it requested information irrelevant to this litigation, which would be both expensive and unduly burdensome to produce; and that it was interposed for an *864 improper purpose. Barham and Arceneaux also moved for the imposition of sanctions under La. C.C.P. arts. 1420 and 1426.
On August 18, 1998, Mr. Abell responded to Barham and Arceneaux's motion by letter in which he suggested a method of resolving any privilege issues raised by the subpoena. In early October, Mr. Abell discovered that the clerk of court had incorrectly issued the subpoena duces tecum under the caption of the instant suit. Since Barham and Arceneaux represented Mr. Goodman in his separate suit, Goodman, the subpoena directed to Barham and Arceneaux was intended by Mr. Abell to have been issued under the caption of that separate suit, as requested, and not under the caption of the CDI litigation. By letter dated October 7, 1998, Mr. Abell explained the error to Barham and Arceneaux and requested that it withdraw its motion for sanctions; however, Barham and Arceneaux refused. The United Group then filed a motion for sanctions against Barham and Arceneaux based on Barham and Arceneaux's refusal to withdraw its motion for sanctions. After a hearing on the motions, the trial court granted Barham and Arceneaux's motion and issued sanctions against The United Group in the amount of $5,475, plus costs. The trial court acknowledged that, under normal circumstances, a party should not be held responsible for the clerk's error, but concluded that this case did not present normal circumstances. In its oral reasons for judgment, the trial court stated:
Now normally I would say, Mr. Abell, if such a mistake is made you certainly couldn't be at fault on it. But the record does reflect in this case that several letters were written with that same caption to Mr. Barham after that subpoena was issued and that the reference is always the sameConsolidated Distributors, Incorporated. I don't see anything that Mr. Barham could have done upon receipt of this other than to go ahead and respond to the subpoena, which he's done, and as I understand it he has filed this motion for sanctions for having to respond to the subpoena.
Accordingly, the trial court then found that The United Group's motion for sanctions was moot. The United Group appeals. For the reasons stated herein, the judgment of the trial court is reversed, in part, and affirmed, in part.

DISCUSSION
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Further, a trial court's determination that La. C.C.P. art. 1420 was, or was not, violated is reviewed on appeal pursuant to the manifest error or clearly wrong standard. Maxie v. McCormick, 95-1105 (La.App. 1st Cir.2/23/96), 669 So.2d 562; Murphy v. Boeing Petroleum Services, Inc., et al, 600 So.2d 823 (La.App. 3d Cir.1992).
The Supreme Court has set forth a two-part test for reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Ledoux v. State, Through DOTD, 98-0024 (La.9/18/98), 719 So.2d 43; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart, supra; Rosell, supra; Arceneaux, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *865 Id. A trial court's finding as to a sanctionable violation under art. 1420 may be reversed, however, if the record furnishes no evidence to support the finding. Maxie, supra.
Statutes which authorize the imposition of penalties, or sanctions, are penal in nature and are to be strictly construed. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983); Penton v. Clarkson, 93-0657 (La.App. 1st Cir.3/11/94), 633 So.2d 918; Maxie, supra. Since La. C.C.P. art. 1420 authorizes the imposition of sanctions, it must be given a strict construction. Maxie, supra.
Article 1420 reads:
(A) Every request for discovery, or response or objection thereto, made by a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the request, response, or objection and state his address.
(B) The signature of an attorney or party constitutes a certification by him that he has read the request, response, or objection and that to the best of his knowledge, information, and belief formed after reasonable inquiry the request, response, or objection is:
(1) Consistent with all the rules of discovery and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;
(2) Not interposed for any improper purpose, such as to harass or to cause unnecessary or needless increase in the cost of litigation; and
(3) Not unreasonable, unduly burdensome, or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.
* * *
(D) If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the request, response, or objection, including a reasonable attorney's fee.
The United Group contends that the trial court failed to adequately examine the evidence under art. 1420 and that the imposition of sanctions was manifestly erroneous. We agree. Our review of the record discloses no evidence on which the trial court could reasonably have found a violation of art. 1420 on the part of Edward Abell, on behalf of The United Group. It is uncontroverted that Mr. Abell's request to the clerk of court was correct. Mr. Abell requested that the subpoena duces tecum directed to Barham and Arceneaux be issued under the caption of the Goodman case. We find no violation of art. 1420(B) in that request. Since Mr. Abell was not in possession of the actual subpoena issued, he did not have knowledge of the clerk's mistake until he spoke with Mr. Barham in early October. At that point, Barham and Arceneaux refused to withdraw its motion for sanctions because it had incurred expenses in responding to the subpoena.
The trial court based its decision regarding the subpoena on the two letters written by Mr. Abell to Barham and Arceneaux. The first of these letters was written on August 18, 1998, prior to Mr. Abell's discovery of the clerk's error. In that letter, Mr. Abell suggests a method by which any privilege objections to the subpoena may be resolved. It is apparent from reading the August 18 letter that Mr. Abell was unaware, at that time, of the clerk's error and believed that any objection to the subpoena was based on other grounds such as privilege. The second *866 letter is dated October 7, 1998, after Mr. Abell's discovery of the clerk's error. This letter contains an explanation of the mistake and requests that Barham and Arceneaux withdraw its motion for sanctions. Both letters reference the instant CDI litigation as the subject of the correspondence. Additionally, the trial court emphasized that Barham and Arceneaux had no option but to respond to the subpoena, despite the fact that it had been issued under the incorrect caption. It is on this evidence alone that the trial court based the finding that The United Group should be sanctioned. Nowhere in the trial court's oral reasons for judgment does the court mention art. 1420, nor does it state what actions on the part of Mr. Abell violated that article. We fail to see how referencing the CDI litigation in the correspondence to Barham and Arceneaux constitutes a violation of art. 1420. Although the subpoena was intended by Mr. Abell to have been issued under the caption of the Goodman case, we find no bad faith in Mr. Abell's referencing the CDI litigation in the letters to Barham and Arceneaux. We also note that on September 11, 1998, Mack Barham sent a letter to Mr. Abell, regarding the subpoena, that also references the CDI litigation. While we agree that it first appeared that the law firm of Barham and Arceneaux was under an obligation to respond to the subpoena, we cannot say that The United Group should suffer sanctions under the particular circumstances of this case.[1] The trial court's judgment to the contrary was clearly wrong, and, therefore, regarding its issuance of sanctions to The United Group, is reversed.
We further find that The United Group's motion for sanctions was properly denied. As previously stated, after granting Barham and Arceneaux's motion for sanctions, the trial court denied The United Group's motion for sanctions against Barham and Arceneaux as moot. Barham and Arceneaux challenge the subpoena on several grounds. The hearing, however, was limited to the issue of sanctions, with the only evidence presented regarding the erroneous issuance of the subpoena under the CDI caption. Since there are unresolved issues regarding the information sought by the subpoena, we find that sanctions should not issue as to either party; and, therefore, the judgment of the trial court denying The United Group's motion for sanctions is affirmed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed, in part, and affirmed, in part. Costs are to be borne equally by the parties.
REVERSED, IN PART, AND AFFIRMED, IN PART.
NOTES
[1] There were several other subpoenas duces tecum erroneously issued under the caption of the CDI litigation. Hayes, Harkey, Smith & Cascio, LLP, and Donald Kneipp were two recipients of similar subpoenas in this CDI suit and both filed motions to quash and for protective orders, the appropriate method of response. La. C.C.P. art. 1426. After reaching an agreement as to production, The United Group withdrew the subpoena issued to Hayes, Harkey, Smith & Cascio, LLP. The record indicates that agreements were also reached with other recipients of the subpoenas.