JASMINE FOSTER                          NO. 24-CA-348

VERSUS                                  FIFTH CIRCUIT

JYTTE BIRDEN                            COURT OF APPEAL

                                        STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 848-179, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


December 30, 2024


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
John J. Molaison, Jr., and Timothy S. Marcel


**REVERSED**
   **JJM**
   **TSM**

**CONCURS WITH REASONS**
   **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
JASMINE FOSTER
     Bianca N. Moore

COUNSEL FOR DEFENDANT/APPELLEE,
JYTTE BIRDEN
     William H. Daume

**MOLAISON, J.**

The appellant seeks review of the trial court's judgment which imposed sanctions for filing a frivolous pleading. We reverse for the following reasons.

## FACTS AND PROCEDURAL HISTORY

On October 18, 2023, the appellant, Jasmine Foster, in proper person, filed a Petition for Protection from Abuse at the Twenty-Fourth Judicial District Court on behalf of her six minor children against Ms. Birden, who is the domestic partner of Ms. Foster's ex-husband. The petition alleged that on October 9, 2023, Ms. Foster's daughter, "E.S.,"[1] told Ms. Foster during breakfast that her mouth hurt. E.S. then allegedly told Ms. Foster that Ms. Birden had hit her in the mouth after E.S. called Ms. Birden's son a "bully." The petition did not provide the date of the alleged incident. Still, it did include a copy of a report from Ochsner Hospital dated October 9, 2023, which indicated a doctor saw E.S. on that date for a "contusion of [the] mouth." Commissioner Patricia Joyce signed a temporary restraining order in favor of Ms. Foster on October 18, 2023, and set the show cause date for October 31, 2023, in front of Commissioner Ruben Bailey.

On October 31, 2023, Ms. Foster and Ms. Birden appeared before Commissioner Ruben in proper person. The transcript from the hearing demonstrates that the focus of the petition for protection was the alleged incident where Ms. Birden hit E.S. in her mouth. Ms. Foster testified that Child Protective Services had opened an investigation into the allegation against Ms. Birden. Evidence accepted into evidence at the hearing included a photograph of E.S.'s alleged injury. Commissioner Ruben declined to admit the doctor's report from Ochsner into evidence. For her part, Ms. Birden first denied being properly served with notice of the proceeding but then waived her objection on the record. She then denied all allegations contained in Ms. Foster's petition. In his testimony, the

---

[1] Initials are used throughout this opinion to protect the identities of the minors involved.

father of Ms. Foster's children, Mr. Sandifer, similarly contradicted the account given in Ms. Foster's petition for protection.

After the hearing, the following exchange took place between Commissioner Ruben and Ms. Foster:

THE COURT:

> At Children's Hospital at the Children's Advocacy Center. They would record the interview of the child. That would be the ideal thing. That recording could then be admitted into evidence and the court could hear that tape and hear the child's own words. okay?

MS. FOSTER:

> Yes. Will do.

THE COURT:

> Right now, there is not enough evidence that the child has been abused. I'm going to dismiss the petition. You have a right to object. You know about objections because you've already been involved in an objection.

After the October 31, 2023 hearing, Commissioner Bailey signed a Notice of Dismissal that dismissed Ms. Foster's petition with prejudice based on her "failure to prove by the appropriate standard the allegations contained in the Petition."

Ms. Foster formally objected to Commissioner Bailey's order on October 31, 2023, and requested a hearing before the district court. The court set the hearing for December 18, 2023. The record indicates that after filing her objection on November 22, 2023, before the district court hearing, Ms. Foster brought her three children, E.S., J.S., and K.S, for an interview at the Audrey Hepburn Care Center at Children's Hospital.[2]

---

[2] In summary, the respective reports from Children's Hospital contained the following information and conclusions:

K.S., age 11, alleged in her interview that she is afraid of her father, who said to her that if she told anyone about what happens while she is at his house then she will get a whipping or be harmed by her father. K.S. said that she had seen her father hit her brother, J.S., with a plastic bat. K.S. also described seeing her father beat her brother with a belt. The "Visit Diagnosis" for the report confirmed "child physical abuse."

E.S., age 7, gave an account of Ms. Birden hitting her in the mouth. E.S. also reported that she had seen her father and Ms. Birden beat J.S. in their room. E.S. said that her dad threatens to whip her or beat her again if she tells anyone what happens when she is at her dad's house, he will. The "Visit Diagnosis" for the report confirmed "child physical abuse."

The district court hearing proceeded on December 18, 2023, and counsel represented both parties. Counsel for Ms. Foster informed the court that she intended to file exhibits into the record that were not introduced at the hearing before Commissioner Bailey. Counsel for Ms. Birden objected to any evidence involving K.S. and J.S. on the basis that "there was no abuse of either of those two children alleged in any way, shape or form in the petition." Judge Steib indicated that he would only consider evidence presented to Commissioner Bailey:[3]

> THE COURT:
>
> And because [Commissioner Bailey] looked at the four corners of the document. He can't go outside of that, so what I'm looking at is whether or not his dismissal of this was correct. And again, we're going to be limited to the four corners of the document. So I mean, if they weren't alleged to have been abused in this petition, maybe you file another petition that gives him all of the facts, but I'm just looking at whether or not the commissioner's dismissal of this petition was correct.

Ms. Foster went on to testify at the hearing and gave an account of the events involving E.S. and the alleged injury to E.S.'s mouth. Ms. Foster stated that Commissioner Bailey suggested that she have E.S. evaluated at Children's Hospital. After her testimony, Judge Steib made the following observation:

> THE COURT:
>
> Well, the bottom line is is [sic] that Commissioner Bailey] gave [Ms. Foster] that information and, at the same time, dismissed the petition for protection from abuse telling her that the allegations contained in the petition were insufficient to sustain the petition for protection.
> What [Commissioner Bailey] was telling her [Ms. Foster] is you go, you get more information, you come back and you may have sufficient allegations to sustain a petition. That's what I'm getting at. [Commissioner Bailey] told [Ms. Foster] what to do.

---

J.S., age 13, stated that he is afraid of his father, who whips the children and threatens to cause harm to him, K.S., and E.S. if any of them tell anyone what happens when they are at their dad's house. J.S. reported that he saw another child in the home, J.S., bear red marks after he was beaten by his dad with a plastic bat in his father's room. The "Visit Diagnosis" for the report indicated "suspected" child physical abuse.

[3] It does not appear from the record that the Children's Hospital reports were entered into evidence at the hearing before Judge Steib.

Near the end of the proceeding, Judge Steib emphasized again that he would only consider evidence presented within the four corners of Ms. Foster's petition. However, Judge Steib alluded to the possibility that Ms. Foster could file a new petition raising different claims.

THE COURT:

. . .

So this is all stuff that doctor -- if she wants to go back and file another petition for protection and put all of the allegations and stuff in it, she may have something but if I'm looking at what's contained in here, does it rise to the standard or not? You know, that's the issue.

After the hearing, Judge Steib commented:

THE COURT:

At this time, I think that if [Ms. Foster] wants to come in and bring in all the stuff that she's saying happened after the date of this petition, she can file another petition and do that. So I'm going to go ahead and sustain Judge Bailey's commissioner Bailey's decision on the dismissal of it.

The minute entry of December 18, 2023, indicates that the trial court "sustained" Judge Bailey's decision to dismiss Ms. Foster's petition and did not assess costs. Ms. Foster did not seek an appeal of this ruling.

On the same date that Judge Steib sustained Commissioner Bailey's dismissal of Ms. Foster's petition, December 18, 2023, Ms. Foster, in proper person, filed a second Louisiana Uniform Abuse Protection Order. Her information on the pre-printed petition indicated she sought the protective order on behalf of "others." The respective reports for E.S, K.S., and J.S. from Children's Hospital are attached to the petition. (76). The court did not grant the temporary restraining order and set the show cause hearing in front of Commissioner Bailey for January 10, 2024. On that date, Commissioner Bailey signed a temporary restraining order in favor of Ms. Foster and set a show cause hearing for February 6, 2024. On January 24, 2024, Ms. Birden filed an exception of *res judicata* and a

motion for sanctions, alleging that the claims raised were both frivolous and repetitive. In her reply to Ms. Birden's exception and motion, Ms. Foster asked the court to grant her voluntary motion for dismissal with prejudice.

At the February 6, 2024 hearing before Commissioner Bailey, counsel represented Ms. Foster and Ms. Birden. Ms. Foster urged the dismissal with prejudice of the pending motion; however, the court did not rule at the hearing. The record shows that on February 6, 2024, Commissioner Bailey signed an Order that dismissed Ms. Foster's petition with prejudice and denied Ms. Birden's exception and request for sanctions. On that same date, Commissioner Bailey took up the issue of sanctions against Ms. Foster. In connection with that motion, the hearing transcript shows that Ms. Birden's attorney presented Commissioner Bailey with several inaccuracies. The first was that Judge Steib had considered and rejected the reports for E.S, K.S., and J.S. from Children's Hospital as part of the December 18, 2023 ruling. As noted above, Judge Steib refused to review the documents as they were not a part of Ms. Foster's original petition. Next, Commissioner Bailey was incorrectly informed that Ms. Foster had filed the same petition for protection three times, which Ms. Foster had only filed two. Counsel then incorrectly stated that Ms. Foster filed the first petition twice. The allegations of abuse against K.S. and J.S. were new and not previously addressed by either Commissioner Bailey or Judge Steib.

In response to Ms. Foster's assertion that she brought E.S, K.S., and J.S. to Children's Hospital upon Commissioner Bailey's instruction, he denied doing so. He categorized Ms. Foster's action as a misunderstanding. When Ms. Foster told Commissioner Bailey that Judge Steib had suggested that she file a new petition to set out new allegations of abuse not addressed in her first filing, counsel for Ms. Birden pointed out that a transcript of the December 18, 2023 district court hearing was not in the record to support Ms. Foster's claim. As observed above, however,

Judge Steib did suggest a new filing several times during the hearing. Commissioner Bailey concluded that if Ms. Foster disagreed with Judge Steib's ruling, her remedy would be to seek an appeal.

Commissioner Bailey then found that Ms. Foster's most recent filing was frivolous before ordering her to pay court costs and attorney's fees with no evidence offered, filed, or introduced into the record. He further granted Ms. Birden's exception of *res judicata*. The record contains a judgment dated February 6, 2024, which consists mainly of a pre-printed form. There are two handwritten notations on the Judgment of Dismissal under the section "WITH PREJUDICE." One says, "The Court finds that the petition is frivolous." The second handwritten sentence says, "Jasmine Foster is ordered to appear on June 6, 2024, to review payment of court cost [sic]."

On February 9, 2024, Ms. Foster formally objected to Commissioner Bailey's order and requested a hearing before the district court. The hearing on Ms. Foster's objection occurred before Judge Steib on April 22, 2024. Ms. Foster represented herself in proper person at the hearing, and counsel represented Ms. Birden. Ms. Foster argued, in summary, that she took the advice of Commissioner Bailey in obtaining the three interviews at Children's Hospital and relied upon Judge Steib's assertion that she could file the new claims in a separate petition:

MS. FOSTER:

I wouldn't have filed constant motions if I was told I couldn't. I got the new evidence. I filed the new evidence. I got the new information. I filed it. I was told to refile. I did everything in the best interest of my children.

During one point in the proceeding, Judge Steib addressed Ms. Foster's claim as follows:

THE COURT:

 .  .  .

Just because the Court says this might be a way to go ahead and handle this, you have to think whether or not it's the absolute right way. When you do something on your own, you're assumed to be acting with the same knowledge that an attorney has even though you're representing yourself and you can be held to the same consequences…

At another point in the hearing, the following exchange took place:

MS. FOSTER:
.  .  .
.  .  .But here on the court transcript I was told four different times that I could be able to file a new motion.

THE COURT:
Just because you can do something doesn't necessarily always mean that you should do something.

Judge Steib ultimately agreed with counsel for Ms. Birden that Ms. Foster's second Petition for Protection from Abuse was no more than a refiling of the original Petition for Protection from Abuse filed on October 18, 2023, and which was dismissed by the Commissioner on October 31, 2023.  The court also found that the second filing was frivolous and that the award of sanctions was appropriate.

Ms. Foster filed a motion for a suspensive appeal on May 22, 2024, and the court granted the motion on June 17, 2024.  The court granted Ms. Foster's motion to covert her suspensive appeal into a devolutive appeal on July 15, 2024.  This appeal followed.

**ASSIGNMENTS OF ERROR**

I. The District Court erred in upholding Commissioner Bailey's finding that Mrs. Foster's Petition for Protection Against Abuse was frivolous.

II. The District Court erred in upholding Commissioner Bailey's sanction and order for Mrs. Foster to pay attorney's fees and court costs for filing a Petition for Protection Against Abuse against Defendant-Appellee.

## LAW AND ANALYSIS

As a preliminary matter, we must address issues related to the Commissioner's February 6, 2024 judgments.

There are two judgments dated February 6, 2024, in the record. One grants Ms. Foster's motion to withdraw her petition and denies sanctions. The other finds her petition to be frivolous and awards sanctions.

The First Circuit, considering a similar issue in *First NBC Bank v. River Park Dev., LLC,* 21-1210 (La. App. 1 Cir. 9/16/22), 353 So.3d 193, 196, held:

> Where a trial court signs a second judgment that makes substantive changes to its first judgment without following the proper procedure for doing so, the second judgment is absolutely null and without effect. See Matter of Succession of Buhler, 17- 0049, pp. 5-6 (La.App. 1 Cir. 2/22/18), 243 So.3d 39, 44-45, writ not considered, 18- 0478 (La. 5/11/18), 241 So.3d 1013. Because the two conflicting judgments signed by the trial court in this matter were signed on the same date, it is unclear which judgment is the second (absolutely null) judgment. As such, we vacate both judgments and remand this matter to the trial court for the rendition of a valid final judgment on River Park's motion for new trial.

Next, even assuming that the Commissioner's judgment, finding a frivolous filing and awarding sanctions, represents the court's intent, it is defective in form. In the case of *Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Techs., Inc.*, 10-477 (La. App. 5 Cir. 10/29/10), 52 So.3d 909, 916, this Court named the elements necessary to form a final appealable judgment:

> A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Johnson, supra, 0337 at 3, 934 So.2d at 67. Accord: Blanke, supra. The specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Vanderbrook v. Coachmen Industries, Inc., 01– 0809, pp. 11–12 (La. App. 1 Cir. 5/10/02), 818 So.2d 906, 913.

Here, the specific nature and amount of damages are not determinable from the alleged "judgment" without reference to an extrinsic source. The judgment does

not provide a precise amount of the court costs and attorney's fees assessed against Ms. Foster.

More importantly, no evidence was introduced at the hearing on Ms. Birden's motion for sanctions to demonstrate how the Commissioner could have arrived at an amount for an award of sanctions. In *Beard v. Beard*, 01-1381 (La. App. 5 Cir. 5/15/02), 821 So.2d 45, 52, we found reversible error when no evidence was introduced to support a judgment of sanctions.

We also have the record before us from which we can determine the merits of the appellant's claims. Here, Ms. Foster, a layperson, both represented herself and had the assistance of counsel at various points in the proceeding. As noted above, there is evidence to support a conclusion that Ms. Foster acted in good faith in filing the second petition. Even if we disregarded the comments of the presiding judges, which could arguably be interpreted as guidance to file the second pleading, the second pleading itself does present claims of abuse that were not present in the first petition. This, too, would be a basis for reversing the trial court's judgment of sanctions. It is also significant that Ms. Foster ultimately filed a motion to voluntarily dismiss her petition.

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. We will pretermit consideration of the merits on the issue whether of Ms. Foster acted in good faith in filing her second petition. Here, no evidence of the costs, which served as the basis for sanctions, was introduced into evidence. Accordingly, we reverse the February 6, 2024 and April 22, 2024 rulings below that awarded and confirmed sanctions, attorney's fees, and court costs to Ms. Birden.

**<u>REVERSED</u>**

**WICKER, J., CONCURS WITH REASONS**

While I agree with both the analysis and the decision in this matter, I write separately for the purpose of pointing out that, in ruling on an objection to a ruling of a domestic commissioner, the trial judge's review is not limited to the evidence initially considered by the commissioner. La. R.S. 13:717(F)(4) provides that a party who disagrees with a domestic commissioner's ruling may file an objection which "shall be heard by the judge of the [24th JDC] to whom the matter was originally allotted" and that on review, "[t]he judge may decide the objection based on the record of the proceedings before the commissioner or may receive further evidence and rule based on that evidence, together with the prior evidence, or may recommit the matter to the commissioner with instructions."

A ruling/order of the domestic commissioner is "interim" until the deadline passes for filing an objection. Where a party timely files an objection to the ruling/order, the domestic commissioner's interim order remains "interim," and a final judgment will be issued by the trial court. Further, admission of new evidence at the trial court level is clearly contemplated by La. R.S. 13:717(F)(4)(c) and, if the objecting party seeks to introduce new evidence in the trial court, a *de novo* review is mandated.

In *Dugue v. Dugue,* 17-525 (La. App. 5 Cir 6/27/18), 250 So.3d 1174, 1177-78, this Court held that because the appellant had timely objected to the hearing officer's recommendations, the recommendations did not become a final judgment and that the appellant was entitled to a *de novo* review of the hearing officer's findings by the district court. We reiterated this holding in *Fairbanks v. Beniate,* 20-206 (La. App. 5 Cir. 12/23/20), 308 So.3d 1222, 1236, *writ denied,* 21-250 (La. 3/23/21, 313 So.3d 272. See also, *Ariatti v. Plaisance,* 18-84 (La. App. 5 Cir. 9/13/18), 255 So.3d 1239, 1249, wherein we recognized a litigant's right to a district court's *de novo* consideration of a domestic commissioner's interim judgment.

On remand, the trial court should be mindful of these principles.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-348**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
BIANCA N. MOORE (APPELLANT)

**MAILED**
WILLIAM H. DAUME (APPELLEE)
ATTORNEY AT LAW
929 4TH STREET
GRETNA, LA 70053